UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AARON ABADI,

                Plaintiff,

-against-

JOSEPH R. BIDEN; THE UNITED STATES
OF AMERICA; MERRICK BRIAN
GARLAND; UNITED STATES
DEPARTMENT OF JUSTICE; ALEJANDRO
MAYORKAS; UNITED STATES
DEPARTMENT OF HOMELAND SECURITY;
TROY MILLER; U.S. CUSTOMS AND
BORDER PROTECTION; PATRICK J.
LECHLEITNER; U.S. CITIZENSHIP AND
IMMIGRATION SERVICES; UR M. JADDOU;
PATRICK J. LECHLEITNER; THE CITY OF
NEW YORK; ERIC ADAMS,

                Defendants.

23-CV-8440 (LTS)

ORDER OF DISMISSAL

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

    Plaintiff, who is appearing *pro se*, brings this action asserting claims about federal and local government policies on immigration. By order dated September 26, 2013, the Court granted Plaintiff's request to proceed *in forma pauperis* (IFP), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses the complaint.

## STANDARD OF REVIEW

    The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff challenges the federal government's decisions to end funding for a wall along the southwest border of the United States; terminate the Covid-era "wait in Mexico" policy (allowing aliens to be turned away at the border without considering their asylum claims); and enact the "Circumvention of Lawful Pathways," final rule. He sues the United States, President Joe Biden, several federal departments and agencies (Department of Homeland Security; Department of Justice; Customs and Border Protection; Citizenship and Immigration Services,

and Immigration and Customs Enforcement), and the heads of those agencies (respectively, Alejandro Mayorkas, Merrick Garland, Troy Miller, Ur Jaddou, and Patrick Lechleitner) – collectively "the Federal Defendants."

Plaintiff contends that the Federal Defendants have violated the U.S. Constitution, the Administrative Procedure Act (by exceeding statutory authority, engaging in arbitrary and capricious actions or failing to act, and promulgating rules without notice and comment), and the Immigration and Nationality Act (by failing to exclude aliens from the United States), and he seeks declaratory and injunctive relief. Specifically, Plaintiff asks the Court to "[h]old unlawful and set aside the Biden Administration's polic[ies]," enjoin the Federal Defendants from enforcing these policies, and compel the Federal Defendants to remove all immigrants who are illegally present in the City of New York. He also brings an application titled, "Emergency Preliminary Injunction Prohibiting The Government From Accepting Any More Illegal Aliens." (ECF 2.)

Plaintiff also challenges the New York City government's policies, which he characterizes as "inviting these illegal immigrants," and its handling of increased numbers of immigrants arriving in New York City. He brings claims against Mayor Eric Adams and the City of New York for "gross negligence." (ECF 1 at 43-44.) He seeks to enjoin New York City policies and seeks damages for "ruining the city where Plaintiff lives, and for causing Plaintiff severe anxiety and fear, and emotional distress." (ECF 1 at 53.)

## DISCUSSION

**A.     Standing to Sue**

Article III of the U.S. Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake'

in the case—in other words, standing." *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)); *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 70 (2d Cir. 2001) ("[S]tanding doctrine evaluates a litigant's personal stake as of the outset of litigation.").

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant, and (iii) that the injury would likely be redressed by judicial relief." *Id.* "The party invoking federal jurisdiction bears the burden of establishing" each element of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

"For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citing *Lujan*, 504 U.S. at 560 n.1). In contrast, "when the asserted harm is a generalized grievance shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Here, Plaintiff's alleged injury is that the City of New York is being "ruined" by immigrants who are allegedly bringing contagious illnesses, engaging in criminal activity, depleting New York City's coffers, and causing him stress and anxiety. These alleged injuries are not concrete and particularized. They have not affected Plaintiff "in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. Instead, such alleged injuries are generalized grievances that Plaintiff "suffers in some indefinite way in common with people generally." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 345 (2006). Plaintiff thus lacks standing to bring claims that he has been injured by federal and local policies on immigration.

**B.   Political Question**

Plaintiff's claims also implicate the political question doctrine. *See, e.g.*, *DaCosta v. Laird*, 471 F.2d 1146, 1152 n.10 (2d Cir. 1973) (holding that, unlike standing, which focuses on

4

the "nature of the party seeking a judgment," the political question doctrine "focuses on the nature of the issue presented to the court"). Although the political question doctrine and standing doctrine have different points of focus, they both "originate in Article III's 'case' or 'controversy' language[.]" *DaimlerChrysler Corp.*, 547 U.S. at 353. "[T]he political question doctrine is a function of the constitutional framework of separation of powers [and] is essentially a constitutional limitation on the courts. . . .[W]here adjudication would force the court to resolve political questions, the proper course for the courts is to dismiss." *767 Third Avenue Assoc. v. Consulate Gen. of Socialist Fed. Republic of Yugoslavia*, 218 F.3d 152, 164 (2d Cir. 2000) (quotation marks and citations omitted).

The Supreme Court has identified six independent tests for the existence of a non-justiciable political question:

> [i] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [ii] a lack of judicially discoverable and manageable standards for resolving it; or [iii] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [iv] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of the government; or [v] an unusual need for unquestioning adherence to a political decision already made; or [vi] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Vieth v. Jubelirer*, 541 U.S. 267, 277-78 (2004) (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)). The doctrine "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986).

Here, Plaintiff challenges federal immigration policies and the alleged impact of increasing numbers of immigrants on him and others in the City of New York. The Supreme Court has explained that "the responsibility for regulating the relationship between the United

5

States and our alien visitors has been committed to the political branches of the Federal Government." *Mathews v. Diaz*, 426 U.S. 67, 81 (1976). "[O]ver no conceivable subject is the legislative power of Congress more complete[.]" *Fiallo v. Bell*, 430 U.S. 787, 792 (1977). "Though the Executive's discretion over the admission and exclusion of aliens is not boundless, there is but a narrow standard of [judicial] review of decisions made by the Congress or the President in the area of immigration and naturalization." *Ahmed v. Cissna*, 327 F. Supp. 3d 650, 662-63 (S.D.N.Y. 2018) (citations and quotations omitted), *aff'd*, 792 F. App'x 908 (2d Cir. 2020).

Plaintiff's claims against the Federal Defendants – which attack "the Biden Administration's misguided policies" – challenge policy choices and value determinations constitutionally committed to the Legislative and Executive Branches. Accordingly, in addition to the fact that Plaintiff lacks standing to assert any of the claims that he brings, his claims against the Federal Defendants are also within the political question doctrine and not subject to adjudication by the federal courts.

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

## CONCLUSION

The Court dismisses this action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). The Court denies Plaintiff's motion for a preliminary injunction as moot.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). Judgment shall enter.

SO ORDERED.

Dated: November 6, 2023
       New York, New York

                                          /s/ Laura Taylor Swain
                                          LAURA TAYLOR SWAIN
                                          Chief United States District Judge